## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONDRE MCMILLAN, | No. 4:23-CV-00561 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| LYCOMING COUNTY,<br>MICHAEL CORTER,<br>TYSON HAVENS,<br>MICHAEL A. CASCHERA, III,<br>CLINTON GARDNER,<br>JOHN and/or JANE DOE(S), and<br>RYAN GARDNER, | |
| Defendants. | |

## MEMORANDUM OPINION

### JANUARY 26, 2024

## I.    BACKGROUND

On October 9, 2023, Plaintiff, Dondre McMillan, filed a fourteen-count Amended Complaint asserting multiple constitutional violations and claims based on Pennsylvania state law against the Defendants. On October 23, 2023, two Motions to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) were filed by the Defendants. These motions are now ripe for disposition; for the reasons that follow, they are granted in part and denied in part.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions in *Bell Atlantic Corp. v. Twombly*[1] and *Ashcroft v. Iqbal*,[2] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[3] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps:" (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[4]

When deciding a motion to dismiss, a court generally considers only the allegations in the complaint, exhibits attached thereto, and facts of public record.[5] Normally, to consider anything beyond those sources, a motion to dismiss must be

---

[1]    550 U.S. 544 (2007).

[2]    556 U.S. 662 (2009).

[3]    *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

[4]    *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[5]    *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

converted to a motion for summary judgment.[6] But consideration of materials outside the complaint is not completely barred on a 12(b)(6) motion. Courts may consider any documents that are integral or explicitly relied upon in the complaint.[7] "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[8] "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[9] It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document.[10] In this matter, this Court finds that these conditions have been met, and will consequently consider the Defendants' attachments.

### B.   Facts Alleged in the Amended Complaint

The facts alleged in the Amended Complaint, which this Court must accept as true for purposes of this motion, are as follows.

#### 1.   The Parties

Dondre McMillan, a black male residing in Lycoming County, Pennsylvania, asserts a series of claims stemming from interactions with law enforcement officers employed by Lycoming County.[11] Michael Corter is a white

---

6   *See* FED. R. CIV. P. 12(D).
7   *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).
8   *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).
9   *Id.*; *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).
10   *Faulkner*, 463 F.3d at 134.
11   *See* Doc. 29 (Amended Compl.) ¶¶ 5-12.

law enforcement officer with the City of Williamsport's Bureau of Police.[12] Tyson Havens, Michael A. Caschera, III, and Clinton Gardner are white employees of Lycoming County's Narcotic Enforcement Unit ("NEU").[13] Havens and Caschera are detectives while Clinton Gardner is a law enforcement officer.[14] Defendants John and/or Jane Doe(s) "were law enforcement officers employed by" Lycoming County "as part of its NEU."[15] Ryan Gardner was, at the time, Lycoming County's District Attorney.[16]

### 2.   McMillan's First Interaction with Law Enforcement

On the evening of May 26, 2019, Plaintiff visited a bar with a friend in Williamsport, Pennsylvania; his friend parked his vehicle in a bank parking lot. Corter and Officer Zachary Saylor saw McMillan return to the parked car while patrolling nearby.[17] The events that follow are disputed by the parties. [18]

### a.   Plaintiff's Version of the Events

McMillan alleges that he dropped his cell phone on the ground while approaching the vehicle.[19] Corter and Saylor then approached him, and Corter

---

[12]   *See id.* ¶ 7.
[13]   *See id.* ¶¶ 8-10.
[14]   *See id.*
[15]   *Id.* ¶ 11.
[16]   *See id.* ¶ 12.
[17]   *See id.* ¶¶ 13-15.
[18]   *See* Doc. 33 (Corter's Brief in Support of Motion to Dismiss); Doc. 37 (Plaintiff's Brief in Opposition to Corter's Motion to Dismiss).
[19]   *See* Doc. 29 (Amended Compl.) ¶ 19.

"falsely accused" him of dropping a firearm.[20] McMillan attempted to show Corter that he had in fact dropped his phone.[21] Corter and Saylor searched both McMillan and the parked vehicle, but no firearm was found.[22]

At this time, Plaintiff's friend arrived at the scene and informed the officers that he had placed his registered firearm "behind the tire of his vehicle" and "that the Plaintiff did not touch, possess, handle or have any knowledge of that firearm."[23] Despite these statements, Corter "arrested and charged [McMillan] with a felony of possession of a firearm and a felony of carrying a firearm without a license."[24]

From McMillan's point of view, Corter's Affidavit of Probable Cause "lacked exculpatory evidence" such as his assertion "that he dropped his cell phone on the pavement," and his friend's statements that he had "placed his registered firearm behind the tire of the vehicle and that the Plaintiff did not touch, handle, or have any knowledge of the firearm."[25]

### b. Defendant Corter's Version of the Events

Corter presents a different version of that night in his Affidavit of Probable Cause. While on patrol, Corter contends that he heard what sounded like a handgun

---

[20] *Id.* ¶ 21.
[21] *See id.* ¶ 22.
[22] *See id.* ¶¶ 23-24.
[23] *Id.* ¶¶ 26-27.
[24] *Id.* ¶ 30.
[25] *Id.* ¶ 31.

falling to the pavement.[26] Saylor then said he saw a gun at McMillan's feet "with [him] standing there with his hands in front of his body as [if] he [had] just dropped the gun."[27] After making contact with McMillan, Corter patted him down "for officer safety."[28] Corter then told McMillan that he had "heard him drop a handgun and that [his] partner [had] observed a gun at his feet."[29] At this point, Saylor saw a "clear plastic cylinder containing marijuana" in "the front drivers" seat of the car.[30] Upon searching the vehicle, Saylor also found "a 40 [caliber] magazine fully loaded."[31] During this search, Plaintiff's friend returned and "stated that he had a license to carry and that he has a handgun in the center console of his vehicle."[32] Saylor did not locate this handgun in the car, and "at that time [Corter] instructed [Saylor] to look under the vehicle."[33] Saylor then found "a black Glock 27 40 [caliber] handgun with an extended magazine," and Corter "ran a triple I on McMillan and discovered that he was a felon not to possess."[34] Corter subsequently arrested McMillan.[35]

---

[26] Doc. 32 (Corter's Motion to Dismiss), Ex. A (Criminal Compl.).
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *See id.*

### 3.     Events Leading up to McMillan's First Trial

After his arrest, McMillan remained incarcerated until he was acquitted at trial in April 2021.[36] At a pretrial Suppression Hearing,[37] Plaintiff testified in his own defense.[38] Leading up to the trial, District Attorney Ryan Gardner had two DNA tests performed on the gun.[39] Neither test provided any evidence against McMillan, but the charges were not withdrawn.[40] At a pretrial hearing in March 2021, "when confronted by the lack of evidence, Assistant District Attorney Martin Wade stated, 'Well we need to push this trial to teach [Corter] a lesson.'"[41] Plaintiff believes this decision "was made at the behest of Defendant Ryan Gardner."[42] Due to these charges, McMillan was held in custody for twenty-three months.[43]

### 4.     Second Interaction with Law Enforcement

On June 10, 2021, Havens, Caschera, Clinton Gardner and the Defendant Doe(s) (collectively the "Traffic Stop Defendants") pulled Plaintiff over for tinted windows, but he asserts that his windows were down at the time of the stop.[44]

---

[36]   *See* Doc. 29 (Amended Compl.) ¶¶ 32, 49.
[37]   No date is provided in the Amended Complaint for this hearing. It occurred at some point between June 2019 and September 2020. *See id.* ¶¶ 33-36.
[38]   *See id.* ¶ 34.
[39]   *See id.* ¶¶ 40-45.
[40]   *See id.*
[41]   *Id.* ¶ 46.
[42]   *Id.*
[43]   *See id.* ¶ 49.
[44]   *See id.* ¶¶ 51-53.

During this stop, the Traffic Stop Defendants had McMillan exit his car and searched it without his consent.[45] No illegal contraband was found during this search.[46] The Traffic Stop Defendants proceeded to order McMillan "to remove his pants, underwear, and socks on the side of a public roadway" and searched his person.[47] The entirety of this interaction lasted fifteen to thirty minutes.[48] Plaintiff believes that these actions were taken "in conspiracy with, and at the direction of," District Attorney Ryan Gardner in "retaliation for" testifying at the Suppression Hearing and due to his race.[49] He further asserts that he "has actual knowledge of [other, similar] occurrences involving" the Traffic Stop Defendants.[50]

McMillan's "vehicle, laptop, house keys, and cell phone" were also confiscated by the Traffic Stop Defendants during this stop.[51] He eventually retrieved his car but never recovered his cell phone.[52] A "find my iPhone" search located it first at Caschera's residence and then at a new address.[53]

On October 27, 2021, "Caschera criminally charged the Plaintiff with felonies of delivery of a controlled substance and conspiracy to deliver a controlled

---

[45] *See id.* ¶¶ 54-55.
[46] *See id.* ¶ 57.
[47] *Id.* ¶¶ 58, 61-62.
[48] *See id.* ¶ 64.
[49] *Id.* ¶¶ 68-70.
[50] *Id.* ¶ 72.
[51] *Id.* ¶ 66.
[52] *See id.* ¶¶ 77-79.
[53] *See id.* ¶¶ 80-83.

substance."[54] McMillan contends that Caschera "stated multiple falsehoods in his affidavit of probable cause."[55] In doing so, McMillan believes that Caschera "fabricated the evidence" to charge him "with a serious crime"[56] and acted "in conspiracy with, and at the direction of," District Attorney Ryan Gardner "in retaliation" for his Suppression Hearing testimony and due to his race.[57]

In connection with these charges, Plaintiff was incarcerated from his arrest on October 28, 2021 until June 28, 2022.[58] After filing a *habeas corpus* motion, his "criminal charges of delivery of a controlled substance and conspiracy to deliver a controlled substance were *nolle prossed* due to a lack of evidence."[59]

## III.   ANALYSIS

In the Amended Complaint, McMillan has asserted fourteen counts against different combinations of the Defendants. To simplify the analysis, the Court will consider any overlapping claims together.

### A.   Defendant Ryan Gardner

Plaintiff voluntarily withdrew all claims against Defendant Ryan Gardner.[60]

---

[54]   *Id.* ¶ 85.
[55]   *Id.* ¶ 87.
[56]   *Id.* ¶ 91.
[57]   *Id.* ¶ 92.
[58]   *See id.* ¶ 99.
[59]   *Id.* ¶ 101.
[60]   *See* Doc. 38 (Brief in Opposition to Ryan Gardner's Motion to Dismiss) at 13.

### B.   Defendant Michael Corter – Malicious Prosecution

To state a claim for malicious prosecution pursuant to Section 1983, McMillan must demonstrate "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of [a] seizure as a consequence of a legal proceeding."[61] An officer initiates "a criminal proceeding if he knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion."[62] Interfering with a prosecutor's informed discretion includes "conceal[ing] material information from prosecuting authorities."[63]

Corter disputes Plaintiff's ability to establish the first, third, and fourth elements of this claim. Whether the exculpatory evidence described by McMillan should have been included in Corter's affidavit of probable cause will determine his ability to satisfy both the first and third prongs.

When "evaluating whether an officer's affidavit establishes probable cause, the court focuses its analysis on whether the officer 'knowingly and deliberately, or

---

[61]   *James v. Brant*, 3:22-CV-106, 2024 U.S. Dist. LEXIS 555, at *16-17 (W.D. Pa. Jan. 2, 2024) (internal citations omitted).

[62]   *Merrero v. Micewski*, No. Civ. A. 96-8534, 1998 WL 414724, at *6 (E.D. Pa. July 22, 1998).

[63]   *Gallo v. City of Philadelphia*, 161 F.3d 217, 220 n.2 (3d Cir. 1998).

with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant.'"[64] The Third Circuit "has explained that '(1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reason to doubt the truth of what he or she is asserting.'"[65] After "'excising the offending inaccuracies and inserting the facts recklessly omitted,'" it must be determined whether probable cause still exists.[66] Although Corter did not have a warrant on May 26, 2019, this form of analysis allows the Court to easily determine whether probable cause existed to arrest McMillan once the appropriate information has been considered.

"Inherent" in the reckless omission "inquiry are two requirements."[67] "First, the officer must have knowledge of the information to have been alleged recklessly omitted."[68] "Second, the information must be relevant to the existence of probable cause."[69] "Unlike omissions, assertions can be made with reckless disregard for the truth even if they involve minor details – recklessness is not measured by the

---

[64] *Stafford v. Morris*, 2:17-CV-00749-MJH, 2019 U.S. Dist. LEXIS 50686, at *11 (W.D. Pa. Mar. 26, 2019).

[65] *Id.* at *12 (quoting *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000)).

[66] *Id.* (quoting *Wilson*, 212 F.3d at 783).

[67] *Id.* (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 471 (3d Cir. 2016)).

[68] *Id.*

[69] *Id.*

relevance of the information, but the demonstration of willingness to affirmatively distort the truth."[70]

In the present case, Plaintiff contends that Corter both omitted exculpatory evidence and included falsehoods in the Affidavit of Probable Cause. He "argues that the omissions and false statements are material, because had" Corter "added the omitted information to his affidavit and corrected his misleading false statements, the Affidavit would not have established probable cause…."[71]

The alleged false statement is Saylor's observation that he observed a gun at Plaintiff's feet; due to the results of the DNA tests, McMillan contends that this statement cannot be true.[72] This incorrectly performs this analysis as the focus of this inquiry is on Cortor's entitlement to rely on the statement made by his fellow officer at that time, not in light of factual developments that occurred months later. "If information from a credible witness or victim is considered sufficient to establish probable cause, even if the information later turns out to be incorrect, then certainly information from a fellow police officer would be considered reliable enough to establish probable cause."[73] Consequently, the Court will not remove this allegedly false statement from the Affidavit of Probable Cause in this analysis. As to the omissions, the exculpatory statements missing from the

---

[70]   *Id.* at *14 (quoting *Wilson*, 212 F.3d at 788).

[71]   *Id.* at *15.

[72]   Doc. 29 (Amended Compl.) ¶¶ 40-45.

[73]   *Arlotta v. Ruege*, No. 03-CV-252, 2006 U.S. Dist. LEXIS 93814, at *9 (E.D. Wis. Dec. 28, 2006).

Affidavit of Probable Cause were both within Corter's knowledge and relevant to whether probable cause to arrest McMillan existed. Therefore, Corter's decision to exclude this evidence was done with a reckless disregard for the truth.

"Following careful consideration of the totality of" the circumstances, including all of the material omissions, "this Court finds" that "probable cause to arrest" existed. Even when this exculpatory evidence is considered, Corter's personal observations and his entitlement to rely on the statement of a fellow officer sufficiently created probable cause that McMillan had possessed the gun.[74] As a result, the malicious prosecution claim asserted against Corter in Count I is dismissed without prejudice.

### C.      The Traffic Stop Defendants

### 1.      Group Pleading Argument

Federal Rule of Civil Procedure "8 'requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue.'"[75] "Allegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient."[76] Although a number of counts in the Amended Complaint are asserted against multiple defendants, the pleadings fall

---

[74]   *Stafford*, 2019 U.S. Dist. LEXIS 50686, at *24.

[75]   *Prater v. Am. Heritage Fed. Credit Union*, 351 F. Supp. 3d 912, 916 (E.D. Pa. 2019).

[76]   *Pollard v. Clark*, 1:20-CV-00194-SPB-RAL, 2021 U.S. Dist. LEXIS 213351, at *8 (W.D. Pa. Nov. 4, 2021) (citing *Van Tassel v. Piccione*, 608 F. App'x. 66, 69-70 (3d Cir. 2015)).

short of the impermissible group pleading method cited by the Traffic Stop Defendants. The allegations against this group are not so vague and general "that they fail to put each defendant on notice of the claims against them"[77] and require the Court to "guess as to who allegedly did what."[78]

### 2.    Insufficient Allegations of Conspiracy

Although unaddressed by the Plaintiff's briefs, the Court notes that to the extent any count is based on an allegation of conspiracy, these claims are legally insufficient. Without any "specific factual allegations of" an agreement, McMillan is relying on mere conclusory allegations to establish a conspiracy.[79]

### 3.    Existence of Probable Cause to Perform the Traffic Stop and Subsequent Searches

In connection with the traffic stop, McMillan alleges three causes of action that depend on a lack of probable cause: an unconstitutional search and seizure of his vehicle and person and federal and state claims of false imprisonment. As a result, the Court will first determine whether probable cause existed to stop McMillan, search his vehicle and person, and temporarily detain him.

"Probable cause exists when 'the facts and circumstances which are within the knowledge of the police officer at the time of the arrest, and of which he has

---

[77] *Pietrangelo v. NUI Corp.*, Civ. No. 04-3223, 2005 U.S. Dist. LEXIS 40832, at *30 (D.N.J. July 18, 2005).

[78] *Yu-Chin Chang v. Upright Fin. Corp.*, No. 19-18414, 2020 U.S. Dist. LEXIS 15009, at *3 (D.N.J. Jan. 28, 2020).

[79] *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000).

reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.'"[80]

While Plaintiff contends that he was improperly stopped for illegally tinted windows, the Traffic Stop Defendants point to alternative circumstances that justify the stop: McMillan unwittingly engaged in a controlled sale of drugs that occurred under police surveillance immediately prior to the traffic stop.[81] But McMillan has also alleged that Caschera fabricated the evidence of this controlled drug sale. As currently alleged, it does not appear that any of the other Traffic Stop Defendants knew of the fabricated evidence.[82] This requires the Court to evaluate what impact, if any, this has on this analysis.

To do so, the Court must determine to what degree the other officers were entitled to rely on Caschera's representations concerning the controlled drug purchase. "In the context of statements made by fellow officers, the Third Circuit has held that probable cause can be based on a fellow officer's statement only if the statement is supported by actual facts that satisfy the probable cause standard."[83] Without any indication that the other officers knew Caschera had

---

[80] *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).

[81] While the incident report and Affidavit of Probable Cause concerning the traffic stop are not included in the Amended Complaint, the Court will consider these attachments as they are "integral" to claims posited by McMillan.

[82] The Court does not credit the conclusory allegations that the Traffic Stop Defendants engaged in the traffic stop and searches of Plaintiff's body and vehicle without probable cause as this is merely asserting a legal conclusion.

[83] *Vanderklok v. United States*, 140 F. Supp. 3d 373, 382 (E.D. Pa. 2015) (citing *Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997)).

fabricated the information, sufficient facts have been pled to allow Havens, Clinton Gardner, and Defendant Doe(s) to have conducted the traffic stop and the searches of McMillan's vehicle and person.

Since the Court must treat as true the allegations that Caschera fabricated the relevant evidence and that the windows of the car were down at the time of the stop,[84] that means he had actual knowledge that probable cause did not exist to justify the traffic stop, subsequent searches, and the temporary detention of McMillan. Therefore, Plaintiff's claims of an unlawful search and seizure and false imprisonment have been pled against Caschera. With this conclusion in mind, it must be determined whether Caschera is entitled to qualified immunity. Officials are granted qualified immunity "unless (1) they violated a federal statutory or constitution right and (2) the unlawfulness of their conduct was 'clearly established at the time'" the violation occurred.[85] Both elements have been met in the present case, and Caschera is not entitled to qualified immunity.

---

[84] The parties debate at length the similarity of this case to *Barnett v. City of Philadelphia*, 498 F. Supp. 3d 700 (E.D. Pa. 2020) due to the window tint issue. However, as properly noted by the Plaintiff, that case dealt with a lower threshold: the reasonable suspicion required to pull over a car. As explained by McMillan, even if that reasonable suspicion standard were met when he was initially pulled over, no justification is provided for the escalation of the stop when McMillan was required to exit his car and submit both his car and his person to searches. *See* Doc. 37 (Brief in Opposition to Clinton Gardner's Motion to Dismiss) at 16-18. For this reason, the Court does not believe *Barnett* justifies the traffic stop sufficiently to shield Caschera from liability.

[85] *D.C. v. Wesby*, 583 U.S. 48, 62-63 (2018) (internal citations omitted).

### 4.    Equal Protection Violation Cause of Action

"To bring a successful claim under [Section 1983] for a denial of equal protection, [McMillan] must prove the existence of purposeful discrimination."[86] He must show that he "receiv[ed] different treatment from that received by other individuals similarly situated" to him. A plaintiff does not have to identify "'specific instances where others have been treated differently.'"[87] "Rather, a general allegation that a plaintiff has been treated differently from others similarly situated will suffice."[88] McMillan alleges that he is a member of a protected class and has been treated differently than other similarly situated individuals due to his race. "These allegations are sufficient to state an equal protection claim based on" his "membership in a protected class."[89] The Traffic Stop Defendants are also not entitled to qualified immunity for this claim as a constitutional violation has been adequately pled and racially discriminatory traffic stops were clearly prohibited at the time of this incident.

### 5.    First Amendment Retaliation Claim

"A First Amendment retaliation claim requires '(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary

---

[86]   *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992).
[87]   *Shkedi v. City of Scranton*, Civ. A. No. 3:CV-14-2069, 2015 U.S. Dist. LEXIS 43122, at *23 (M.D. Pa. Apr. 1, 2015) (quoting *Suber v. Guinta*, 902 F. Supp. 2d 591, 606 (E.D. Pa. 2012)).
[88]   *Id.*
[89]   *Id.*

firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'"[90]

McMillan is easily able to establish the first two elements of this claim: testifying at the Suppression Hearing is constitutionally protected conduct and being targeted by the police is a sufficiently retaliatory action. "To establish the requisite causal connection, [McMillan] must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[91] "In the absence of that proof[,] the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation."[92]

The only protected conduct identified by McMillan is his testimony at the Suppression Hearing; no date is provided for this Hearing, but it can be inferred that it occurred between June 2019 and September 2020.[93] The retaliatory action did not occur until June 2021.[94] At first glance, this would end this analysis,[95] but the Court acknowledges that McMillan's continued detention until his acquittal in

---

[90] *Id.* at 25.
[91] *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).
[92] *Id.*
[93] *See* Doc. 29 (Amended Compl.) ¶¶ 33-36.
[94] *See id.* ¶¶ 48, 51.
[95] *Killion v. Coffey*, Civ. No. 13-1808, 2015 U.S. Dist. LEXIS 156444, at *31-34 (D.N.J. Nov. 19, 2015).

April 2021 explains this gap in time.[96] Thus, when looking at the period between his release from custody and the alleged retaliatory conduct, sufficient temporal proximity exists to establish causation. The Traffic Stop Defendants motion to dismiss regarding this claim is therefore denied as they are similarly not entitled to qualified immunity for this cause of action.

### 6.    Remaining State Law Claims

The remaining claims against all of the Traffic Stop Defendants are the following intentional torts: conversion, trespass to chattel, and intentional infliction of emotional distress.[97] The Pennsylvania Political Subdivision Tort Claims Act "bars claims against municipal employees unless his or her conduct constitutes a 'crime, actual fraud, actual malice or willful misconduct.'"[98] Essentially, "Pennsylvania courts have held [willful misconduct] to be synonymous with the term 'intentional tort.'"[99] As a result, the Pennsylvania Political Subdivision Tort Claims Act will not bar these causes of action.

### D.    Caschera

McMillan brings additional claims of malicious prosecution, false arrest, false imprisonment, and fabrication of evidence against Caschera.

---

[96] In *Falco v. Zimmer*, 767 F. App'x 288 (3d Cir. 2019) the Third Circuit seemingly acknowledges that temporal gaps outside of the control of the Plaintiff can be disregarded.

[97] *See Bronson v. Office of Chief Counsel*, No. 245 M.D. 2008, 2009 Pa. Commw. Unpub. LEXIS 427, at *4 (Pa. Commw. Ct. Jan. 9, 2009).

[98] *Estate of Singletary v. City of Philadelphia*, No. 19-CV-190-JMY, 2021 U.S. Dist. LEXIS 217607, at *58 (E.D. Pa. Nov. 10, 2021).

[99] *Allen v. Millsaps*, Civ. A. No. 1:18-CV-00681, 2019 U.S. Dist. LEXIS 26840, at *20 (M.D. Pa. Feb. 19, 2019).

### 1.      Fabrication of Evidence

Caschera concedes that Plaintiff has adequately pled a claim of fabrication of evidence against him. Due to this, the Court will not analyze Count IX as asserted against Caschera.

### 2.      False Arrest and False Imprisonment

"A false arrest is defined as [(1)] an arrest made without probable cause or [(2)] an arrest made by a person without [the] privilege to do so."[100] "A claim for false imprisonment" is "similar to a claim for false arrest."[101] "To state a claim for false imprisonment, a plaintiff must establish: (1) that she was detained; and (2) that the detention was unlawful."[102] Both ultimately depend on a lack of probable cause.[103]

As alleged, Caschera had personal knowledge that probable cause did not exist to justify McMillan's arrest and detention. By fabricating the evidence relied upon in the Affidavit of Probbale Cause, it is impossible for him to have genuinely believed that probable cause existed. Since qualified immunity is similarly unavailable to Caschera in this instance, his motion to dismiss these claims of false of arrest and false imprisonment is denied.

---

[100] *McGriff v. Vidovich*, 699 A.2d 797, 799 n.3 (Pa. Commw. Ct. Aug. 12, 1997).

[101] *Simpson v. Owner of Dollar Tree Store*, Civ. A. No. 09-6162, 2010 WL 3364200, at *6 (E.D. Pa. Aug. 23, 2010) (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)).

[102] *James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012) (citing *Wallace v. Kato*, 549 U.S. 384, 389 (2007)).

[103] *See Groman*, 47 F.3d at 636.

### 3.      Malicious Prosecution

Again, to plead a claim of malicious prosecution, McMillan must allege that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[104]

Unlike his claim against Corter, McMillan has satisfied these five elements, and Caschera is not entitled to qualified immunity. Although Caschera is a law enforcement officer, he "initiated a criminal proceeding" in this instance by providing prosecutors with false information. Next, the proceeding ended in McMillan's favor and, due to the Court's acceptance of the fabricated evidence allegation, the proceeding lacked probable cause when initiated. Although not explicitly alleged, it can be inferred that Caschera acted for a reason "other than bringing" him "to justice."[105] Finally, McMillan clearly suffered a "deprivation of liberty consistent with the concept of [a] seizure" given he was held in pre-trial detention.

---

[104]  *James*, 2024 U.S. Dist. LEXIS 555, at *16-17.

[105]  This assumption is based on the allegations that Caschera acted to retaliate against McMillan and due to his race. *See* Doc. 29 (Amended Compl.) ¶¶ 69-72.

### E.    Lycoming County

"To plead a Section 1983 claim against a municipality, a plaintiff must allege (1) an underlying constitutional violation (2) caused by the municipality's execution of a municipal policy or custom."[106] "A municipal policy is a 'statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers.'"[107] "A custom is 'an act that has not been formally approved by an appropriate decision maker, but is so widespread as to have the force of law.'"[108] Plaintiffs must also demonstrate "a direct causal link" between the relevant policy or custom and the alleged constitutional violation.[109] To do so, McMillan "must 'identify a custom or policy, and specify what exactly that custom or policy was.'"[110]

"In the alternative, a municipality may be liable under Section 1983 for a failure to train, monitor, [discipline] or supervise" if "the failure alleged" amounts to "deliberate indifference to the constitutional rights of persons with whom the police come in contact."[111] Deliberate indifference is most often shown through a pattern of violations, but a single incident may be sufficient if "policymakers 'knew to a moral certainty' that the alleged constitutional deprivation would occur

---

[106] *Small v. Lower Paxton Twp.*, No. 1:22-CV-01146, 2023 U.S. Dist. LEXIS 124829, at *29 (M.D. Pa. July 19, 2023) (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003)).

[107] *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 385 (1989)).

[108] *Id.* (quoting *Natale*, 318 F.3d at 584).

[109] *Id.* (quoting *City of Canton*, 489 U.S. at 385).

[110] *Id.* (quoting *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)).

[111] *Id.* at *29-30 (quoting *City of Canton*, 489 U.S. at 388).

and the need for further training 'must have been plainly obvious.'"[112] A Section 1983 "plaintiff pressing a claim of this kind must identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur."[113]

### 1. Claims Based on Lycoming County's Failure to Train, Control, Discipline, or Supervise its Law Enforcement Officers

McMillan asserts a failure to train, control, discipline, or supervise theory against Lycoming County in Counts II, III, V, VI, VII, VIII, and in part of the allegations in Count X. Even assuming that the relevant constitutional violations have been properly pled, the Amended Complaint fails to identify "training deficiencies specific" to the relevant behavior that "allegedly caused plaintiff's injury."[114] Although there are no heightened pleading standards for a *Monell* claim,[115] the present allegations fall short of sufficiently identifying the inadequate training, and these claims fail for that reason.

---

[112] *Id.* at *30 (quoting *City of Canton*, 489 U.S. at 390 n.10).

[113] *Joyner v. City of Wilmington*, C.A. No. 14-975-SLR-SRF, 2015 U.S. Dist. LEXIS 104191, at *18 (D. Del. Aug. 10, 2015) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)).

[114] *Id.*

[115] *See e.g.*, *Morgan v. Pennsylvania*, No. 4:23-CV-00872, 2023 U.S. Dist. LEXIS 177374, at *16 (M.D. Pa. Oct. 2, 2023).

## 2. District Attorney Ryan Gardner is a Final Municipal Policymaker

In order for the *Monell* claim based on the fabrication of evidence allegations to proceed, it needs to be established that a relevant policy or custom existed that can be attributed to a final policymaker.[116] Then-District Attorney Ryan Gardner is a final policymaker for purposes of this motion if he acted in an investigatory capacity.[117] Given that Ryan Gardner allegedly directed law enforcement personnel in their investigations, he acted as a final policymaker.

## 3. Fabricating Evidence Policy or Custom

Since McMillan has identified an appropriate final decisionmaker, it must be determined whether the allegations sufficiently establish that Lycoming County had a policy or custom of having its law enforcement officers fabricate evidence "that individuals are in possession of prerecorded police funds in order to criminally charge those individuals."[118] There is an obvious lack of any formal policies promoting the use of fabricated evidence, and instead the Court will analyze if a custom exists. While McMillan does identify his own, "personal circumstances," this claim still fails.[119] As currently alleged, McMillan pleads nothing "other than some wholly conclusory and highly generalized assertions

---

[116] *See e.g.*, *Rodriguez v. City & Cnty. Of Phila.*, Civ. A. No. 15-4973, 2016 U.S. Dist. LEXIS 78371, at *21 (E.D. Pa. June 16, 2016).

[117] *See Fogle v. Sokol*, 2:17-CV-194, 2018 U.S. Dist. LEXIS 217701, at *28 (W.D. Pa. Dec. 28, 2018).

[118] Doc. 29 (Amended Compl.) ¶ 191.

[119] *Phillips v. Northampton Cnty.*, Civ. A. No. 14-6007, 2016 U.S. Dist. LEXIS 125448, at *44 (E.D. Pa. Sept. 14, 2016).

about unspecified patterns of misconduct" and thus "no facts to support the existence of any policy, custom, or practice."[120] "While plaintiff is not expected to plead such a claim with any great specificity, the inference of a general policy or custom of fabricating" evidence "is simply too tenuous based on the" Amended Complaint's allegations.[121]

## IV.   CONCLUSION

Defendants' motions to dismiss pursuant to Rule 12(b)(6) are granted in part and denied in part; Plaintiff is granted leave to amend. "The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought."[122]  But the law in the Third Circuit is clear that leave to amend should be "freely given" regardless of whether leave is specifically requested.[123]

As such, Plaintiff will be given fourteen days from today's date to file a second amended complaint.  If no second amended complaint is filed, the counts subject to dismissal without prejudice will then be subject to dismissal with prejudice.

---

[120] *Phillips v. Northampton Cnty.*, 687 F. App'x 129, 132 (3d Cir. 2017).
[121] *Phillips*, 2016 U.S. Dist. LEXIS 125448, at *44.
[122] *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).
[123] *Id.* (quoting Fed. R. Civ. P. 15(a)).

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge