**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DONDRE MCMILLAN, | No. 4:23-CV-00561 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| TYSON HAVENS, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

**OCTOBER 21, 2025**

Now pending before the Court in this civil rights matter are two motions for summary judgment filed by the remaining Defendants, Tyson Havens, Michael A. Caschera, III, and Clinton Gardner. *Pro se* Plaintiff Dondre McMillan has not opposed the motions, nor has he submitted any evidence to support his remaining claims. For the following reasons, the motions are granted and judgment is entered in favor of Defendants on Counts II-XI. The Court declines supplemental jurisdiction over the unresolved state law claims, and Counts XII-XIV are dismissed without prejudice.

## I.    BACKGROUND

### A.    Factual Background

The following facts are drawn from Defendants' Statement of Undisputed Material Facts and evidentiary submissions. Because he did not submit any

opposition, Mr. McMillan has "failed to properly address [these] assertion[s] of fact as required by Rule 56(c)," and I will therefore "consider [them] undisputed for purposes of the motion."[1]

In 2019, Mr. McMillan was charged by Lycoming County Pennsylvania law enforcement with felonies for possession of a firearm and carrying a firearm without a license.[2] That case went to trial in April 2021, and Mr. McMillan was acquitted on both counts.[3]

On June 11, 2021, Lycoming County Detectives Tyson Havens and Michael Caschera set up a controlled buy of crack cocaine in Williamsport, Pennsylvania.[4] Caschera was undercover and attempted to purchase the controlled substance from Shalamar Brown,[5] while Havens observed the transaction from a distance.[6] Caschera documented the cash that he was using to make the purchase and passed five recorded $20 notes to Brown, who advised that he needed to call in a supplier.[7] Caschera left the immediate area to wait for the delivery,[8] and Havens continued observing Brown's residence.[9] Eventually, Mr. McMillan arrived at Brown's

---

[1]  Fed. R. Civ. P. 56(e)(2).
[2]  Doc. 29 (Am. Compl.) ¶ 30.
[3]  *Id.* ¶ 48.
[4]  Doc. 74-2 (Havens Decl.) ¶¶ 1, 4; Doc. 74-3 (Caschera Decl.) ¶¶ 1, 3-4.
[5]  Doc. 74-2 ¶ 5; Doc. 74-3 ¶¶ 3-5.
[6]  Doc. 74-2 ¶¶ 6-7.
[7]  Doc. 74-3 ¶¶ 5-7.
[8]  *Id.* ¶ 7.
[9]  Doc. 74-2 ¶¶ 6-8.

apartment.[10] Havens watched as Brown got in the car with Mr. McMillan for about thirty seconds before returning to his apartment, at which point Mr. McMillan drove away.[11] According to Mr. McMillan, he was stopping by Brown's house to "check[] his AC on his vehicle."[12] Mr. McMillan recalls that he got out of his car to meet Brown and stayed there for "at least ten minutes, 20 minutes at least."[13]

Havens followed Mr. McMillan.[14] Several other police officers in the area were also tracking Mr. McMillan, and, when one officer witnessed him fail to stop at a stop sign, Officer Clinton Gardner executed a traffic stop.[15] While the stop was in progress, Brown called Caschera to let him know that the drugs had arrived.[16] Caschera returned to Brown's apartment, where Brown gave him suspected crack cocaine.[17] Brown explained that he had paid his supplier $80 of Caschera's $100 and was keeping the last $20 for himself.[18] After the transaction was complete, Caschera

---

[10]  *Id.* ¶ 8; Doc. 74-5 (McMillan Dep.) at 125:15-126:14.

[11]  Doc. 74-2 ¶¶ 9-10.

[12]  Doc. 74-5 at 47:13-17, 48:2-18.

[13]  *Id.* at 126:18-128:7, 150:16-151:18.

[14]  Doc. 74-2 ¶ 10.

[15]  *Id.* ¶¶ 11-13. Gardner also justified the stop based on illegal window tint. *Id.* Mr. McMillan contends that the tinting justification was contrived because, although his windows were in fact tinted, they were down at the time of the stop. Doc. 74-5 at 50:2-51:11. He also disagrees that he ran a stop sign. *Id.* at 129:8-22. Defendants included a bystander's video of the stop, Doc. 74-7, but the essentially none of the disputed interactions is captured in the footage.

[16]  Doc. 74-3 ¶ 12.

[17]  *Id.* ¶ 13.

[18]  *Id.* ¶ 14.

radioed Havens to confirm that he had received a suspected controlled substance from Brown, and that Brown's supplier likely had the four outstanding twenties.[19]

Havens arrived at the traffic stop shortly thereafter.[20] Based on his own observations and the information conveyed by Caschera, Havens believed that there was probable cause to arrest Mr. McMillan for felony delivery of a controlled substance.[21] Havens ordered Mr. McMillan out of his car and patted him down.[22] Mr. McMillan says that Havens took his phone before ordering him out of the car.[23] The pat-down revealed what felt like a wad of money in Mr. McMillan's front pocket, and, according to Havens, Mr. McMillan agreed to produce the money and consented to Havens's request to review it.[24] Mr. McMillan does not recall Havens asking to review the money nor his consenting thereto.[25] Mr. McMillan also contends that Havens took money—$400—out of the center console of his car over his objection to a vehicle search.[26] When Havens checked the bills, he confirmed that four twenties with serial numbers matching the prerecorded notes were in Mr.

---

[19]   *Id.* ¶ 15; Doc. 74-2 ¶ 14.

[20]   Doc. 74-2 ¶ 17.

[21]   *Id.* ¶ 20.

[22]   *Id.* ¶ 21.

[23]   Doc. 74-5 at 52:16-19, 57:22-59:20, 61:5-62:20 (when this search occurred during the stop is not clear from Mr. McMillan's testimony).

[24]   Doc. 74-2 ¶¶ 21-22; *see* Doc. 74-5 at 53:10-11.

[25]   Doc. 74-5 at 142:14-143:10.

[26]   *Id.* at 53:2-10.

McMillan's possession.[27] Mr. McMillan claims that throughout the stop Gardner repeatedly asked him if he was a gang member.[28]

After reviewing the money, Havens asked Mr. McMillan to "lower his outer pants and waistband for a quick visual check" for contraband hidden in the groin area, which he did.[29] The check "lasted fewer than ten seconds" and occurred "behind an open patrol-car door on the curb side of the road."[30] Mr. McMillan's recollection is different: he describes this check as an extensive strip search which occurred after the officers had placed him in handcuffs.[31] Mr. McMillan refused a search of his vehicle, so Havens impounded it pending a search warrant application.[32] The stop "was conducted in approximately 15 minutes or less."[33] At the end of the stop, Mr. McMillan was released.[34] In his deposition, Mr. McMillan conceded that he had not located any witnesses who would testify to corroborate his recollection of the stop.[35]

---

[27]  Doc. 74-2 ¶¶ 23-24. Mr. McMillan generally believes that the authorities entirely fabricated the prerecorded bills. Doc. 74-5 at 134:16-139:3, 144:8-23.

[28]  *E.g.*, Doc. 74-5 at 62:21-64:11.

[29]  Doc. 74-2 ¶ 25.

[30]  *Id.*

[31]  Doc. 74-5 at 54:11-55:11, 81:15-83:3.

[32]  Doc. 74-2 ¶ 26.

[33]  *Id.* ¶ 29.

[34]  *Id.* ¶ 30.

[35]  Doc. 74-5 at 176:4-10.

As part of the impoundment, authorities also held the items in the car, all of which were returned with the vehicle approximately a week after the stop.[36] Mr. McMillan avers that his phone and the $400 were never returned.[37]

Several months later, on October 27, 2021, authorities filed a state criminal complaint against Mr. McMillan based on the events of June 11.[38] Caschera was the affiant on the probable cause affidavit.[39] The affidavit stated that "Dondre McMillan dealt approx. 0.55grams [sic] of suspected crack, cocaine to Shalamar Brown in the area of Memorial St. and Locust St. BROWN [sic] then delivered the suspected crack, cocaine to this Det."[40] The affidavit describes the controlled buy as set forth above, and notes that the interaction between Mr. McMillan and Brown involved "a hand to hand exchange."[41] The affidavit also describes the traffic stop and location of the documented transaction money.[42] Caschera explains in his declaration that he "believed the hand-to-hand exchange occurred based on circumstantial evidence reported to me from other" officers.[43] On October 28, 2021, Pennsylvania Magisterial District Judge Christian David Frey issued an arrest warrant for Mr. McMillan based on the criminal complaint and affidavit of probable cause.[44] And at

---

[36] *Id.* at 97:10-100:15.
[37] *Id.* at 100:16-21, 101:16-102:5.
[38] Doc. 74-3 ¶ 23.
[39] *Id.* ¶ 23.
[40] *Id.* ¶ 24.
[41] *Id.*
[42] *Id.*
[43] *Id.* ¶ 28.
[44] *Id.* ¶ 26.

a preliminary hearing on the charges, Magisterial District Judge Frey determined that the Commonwealth had established a prima facie case based on "substantially the same evidence."[45] Mr. McMillan was held on those charges until June 28, 2022, when they were *nolle prossed* following a habeas corpus proceeding in which Mr. McMillan claims that Brown testified that he had purchased the June 11 crack cocaine from someone other than Mr. McMillan.[46]

### B.    Procedural Background

Mr. McMillan commenced this case on April 3, 2023.[47] After he submitted an amended complaint,[48] Defendants moved to dismiss his claims in full.[49] I granted in part and denied in part those motions on January 26, 2024.[50] The remaining Defendants took discovery. Mr. McMillan did not participate in discovery at all except to sit for a deposition.[51] At the end of discovery, Defendants submitted the instant motions for summary judgment.[52] Mr. McMillan did not file any opposition.

## II.    LAW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and

---

[45]  *Id.* ¶ 36.
[46]  *See* Doc. 29 ¶ 101; Doc. 74-5 at 166:4-167:13.
[47]  Doc. 1 (Compl.).
[48]  Doc. 29.
[49]  Docs. 31, 32 (Mots. to Dismiss).
[50]  Docs. 40 (Mem. Op.), 41 (Order).
[51]  *See* Doc. 74 (Defs. Statement of Undisputed Facts) ¶¶ 57-63.
[52]  Docs. 71, 72 (Mots. for Summ. J.).

the movant is entitled to judgment as a matter of law."[53] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[54] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[55] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[56]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[57] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[58] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[59]

---

[53] Fed. R. Civ. P. 56(a).

[54] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).

[55] *Clark v. Mod. Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).

[56] *Id.*

[57] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[58] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[59] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[60]

When a motion for summary judgment is unopposed, the Court may grant summary judgment when review of the record establishes "that judgment for the moving party is 'appropriate.'"[61] Because the movant here does not bear the burden of proof at trial, to grant the motion I "must determine that the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law."[62]

## III.    ANALYSIS

Twelve of Mr. McMillan's fourteen counts survived dismissal in some form. Those counts are: Count II – Unlawful Search and Seizure (Fourth Amendment); Count III – False Imprisonment (Fourth Amendment); Count IV – Equal Protection (Fourteenth Amendment); Count V – Retaliation (First Amendment); Count VI – Malicious Prosecution (Fourth Amendment); Count VII – False Arrest (Fourth Amendment); Count VIII – False Imprisonment (Fourth Amendment); Count IX – Fabrication of Evidence (Fourteenth Amendment); Count XI – False Imprisonment (Pennsylvania Common Law); Count XII – Intentional Infliction of Emotional Distress (Pennsylvania Common Law); Count XIII – Trespass to Chattel

---

[60]   Fed. R. Civ. P. 56(c)(3).
[61]   *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990).
[62]   *Id.* at 175 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

(Pennsylvania Common Law); and Count XIV – Conversion (Pennsylvania Common Law). All of these counts center on the June 11 stop and the charges that arose therefrom. I will review them in chronological order, moving through the controlled buy, stop, search, arrest, charges, and global issues. Before analyzing the counts, the Court preliminarily resolves the matter of the remaining Doe Defendants.

## A.    Doe Defendants

In his amended complaint, Mr. McMillan levied several claims against an "unknown . . . number" of unidentified "John and/or Jane Doe(s)."[63] Although the rules permit claims against "Doe Defendants," "the plaintiff must eventually identify" them.[64] The time to do so arrives following an opportunity for "reasonable discovery."[65] "[I]f the plaintiff does not identify the Doe defendants after adequate time for discovery, the court may dismiss [them] pursuant to Fed. R. Civ. P. 21."[66] Mr. McMillan had an opportunity for discovery and failed to use it. The still-unnamed Doe Defendants are therefore dropped as parties under Rule 21.

## B.    Count IX – Fabrication of Evidence

Mr. McMillan maintains a section 1983 claim for fabrication of evidence against only Caschera.[67] This claim centers on the allegation that "Caschera

---

[63]  Doc. 29 ¶ 11.
[64]  *Evans v. Columbia County*, 711 F. Supp. 3d 256, 316 (M.D. Pa. 2024).
[65]  *Blakeslee v. Clinton County*, 336 F. App'x 248, 250 (3d Cir. 2009).
[66]  *Evans*, 711 F. Supp. 3d at 316 (collecting cases); *see Blakeslee*, 336 F. App'x at 250 (stating Doe defendants not identified following discovery "*must* be dismissed" (emphasis added)).
[67]  The Count was also alleged against dismissed defendants Lycoming County and Ryan Gardner. Neither of those defendants was present for the controlled buy or the stop.

fabricated the evidence that Plaintiff was in possession of prerecorded police funds in order to charge the Plaintiff with a serious crime."[68] A fair reading of the complaint suggests that Mr. McMillan also contends that Caschera fabricated a description of the controlled buy in the affidavit of probable cause which led to Mr. McMillan's arrest.[69]

The evidentiary bar for establishing a due process claim based on fabricated evidence is high.[70] To withstand a motion for summary judgment, Mr. McMillan "must bring 'persuasive evidence supporting a conclusion that [defendant] was aware that evidence is incorrect or that it was offered in bad faith.'"[71] Testimony that turns out to be wrong or is "simply disputed" does not meet reach the threshold.[72] Furthermore, a section 1983 fabrication plaintiff's "claim requires him to show that the criminal proceedings against him—and the consequent deprivations of his liberty—were caused by [defendant's] malfeasance in fabricating evidence."[73] This causation standard is similarly high: Mr. McMillan must show that "absent that fabricated evidence, [he] would not have been criminally charged," and "that the fabricated evidence 'was so significant that it could have affected the outcome of the

---

[68] Doc. 29 ¶ 188.
[69] *See id.* ¶¶ 87-91
[70] *Black v. Montgomery County*, 835 F.3d 358, 372 (3d Cir. 2016).
[71] *Mervilus v. Union County*, 73 F.4th 185, 194 (3d Cir. 2023) (quoting *Black*, 835 F.3d at 372).
[72] *Id.* (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014)).
[73] *McDonough v. Smith*, 588 U.S. 109, 117 (2019).

criminal case.'"[74] Because the standard is difficult to meet, the Third Circuit has repeatedly warned that "it will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with fabricated evidence."[75]

Mr. McMillan has not produced sufficient evidence to establish fabrication. His contention that Caschera fabricated the prerecorded police funds is rooted solely in the circumstantial evidence of his conflicting account of the events of June 11. He argues that he never transacted anything with Brown, so he couldn't have had the prerecorded funds. But it is undisputed that Caschera gave prerecorded bills to Brown.[76] Caschera did not witness the interaction between Mr. McMillan and Brown.[77] Nor was Caschera present at the stop.[78] It was Havens who observed the transaction and supposedly recovered the prerecorded funds.[79]

These facts, even when viewed in the light most favorable to Mr. McMillan, fail to establish a fabrication claim against Caschera for two reasons. First, assuming it is true that Mr. McMillan never received money from Brown and so did not have

---

[74]   *Black*, 835 F.3d at 371-72; *see Burke v. Bachert*, 702 F. Supp. 3d 347, 363 (E.D. Pa. 2023) (listing these considerations as a three-factor test).

[75]   *Mervilus*, 73 F.4th at 194 (quoting *Halsey*, 750 F.3d at 295).

[76]   *See* Doc. 74-5 at 123:8-125:14 ("Q. [A]ssume that the transaction was complete means that the undercover officers provided the money to Mr. Brown. A. Okay. Q. Do you have any reason to believe that that's not true? A. No."); Doc. 74-3 ¶¶ 5-7.

[77]   Doc. 74-3 ¶ 7.

[78]   Doc. 74-5 at 156:22-157:1 (agreeing that Caschera could not have planted money at the stop because he was not present).

[79]   Doc. 74-2 ¶¶ 6-9, 21-24.

it at the stop, nothing in the record demonstrates that Caschera was or had any reason to be aware of that fact. Even if Havens was lying about the interaction between Mr. McMillan and Brown and finding the money on Mr. McMillan, nothing other than speculation suggests that Caschera knew the information was not true. Circumstantial speculation falls far short of the "persuasive evidence" requirement for surviving summary judgment by showing that Caschera knew that the evidence was incorrect or offered in bad faith.[80] Second, because Mr. McMillan has not provided any opposition or evidence, the record in his favor is so thin that the Court cannot reasonably determine what impact the evidence had on the filing of criminal charges or the outcome of his case. So he fails the causation requirement as well. These conclusions similarly negate a claim based on the affidavit of probable cause, because Caschera's statements about the controlled buy and stop were clearly based on the observations of other officers, which there is no evidence Caschera knew were untrue.[81]

Accordingly, Caschera's motion for summary judgment on Count IX is granted.

---

[80] *Mervilus*, 73 F.4th at 194; *see Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279-80 (2d Cir. 2016) ("In order to succeed on a claim for a denial of the right to a fair trial against a police officer based on an allegation that the officer falsified information, an arrestee must prove by a preponderance of the evidence that the *officer created* false information, the officer forwarded the false information to prosecutors, and the false information was likely to influence a jury's decision.") (emphasis added).

[81] Doc. 74-9 at 6 (describing "[s]urveillance" of McMillan/Brown exchange "after [Caschera] departed the area" and noting that "Ofc Gardner stopped McMillan").

### C.    Count II – Unlawful Search and Seizure

Mr. McMillan's section 1983 claim for an unlawful search and seizure in violation of the Fourth Amendment arising from the June 11 traffic stop remains as to only Caschera.[82] To be liable under section 1983, a defendant must have been "personally involved in the constitutional violation."[83] On a Fourth Amendment claim for unlawful search and seizure, personal involvement is established by showing that the defendant was either involved in the search itself,[84] or played a direct role in establishing an illegitimate ground for the search, thereby rendering it illegal.[85] Caschera was not present at the stop and did not participate in the search conducted there.[86] And, to the extent the searching officers' probable cause determination was based on his statements, there is no dispute that he was truthful in stating that (1) he gave the marked bills to Brown and (2) Brown later gave him crack cocaine. Havens, who is no longer a defendant on this count, was responsible

---

[82]  *See* Doc. 40 at 15-16 (dismissing Count II as to "Havens, Clinton Gardner, and Defendant Doe(s)"); Doc. 41 (same).

[83]  *Lozano v. New Jersey*, 9 F.4th 239, 242 (3d Cir. 2021).

[84]  *Swope v. City of Pittsburgh*, 90 F. Supp. 3d 400, 411 (W.D. Pa. 2015) (defendant "cannot be held liable for conducting an unreasonable search and seizure that he did not participate in"); *see Sharrar v. Felsing*, 128 F.3d 810, 825-26 (3d Cir. 1997) ("Inasmuch as [defendant] did not participate in the search itself, it was not error to grant summary judgment as to him.").

[85]  *Sharrar*, 128 F.3d at 831 (Defendant "may be held liable for his role in the illegal search if the jury found that he participated by procuring an invalid warrant or authorizing the search based on that warrant."); *see Witters v. Smith*, 736 F. Supp. 3d 238, 247 (M.D. Pa. 2024) (explaining that personal involvement means "direct participation, personal direction, or actual knowledge and acquiescence" (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[86]  Doc. 74-5 at 67:8-14 ("Q. Can you tell me when Officer Caschera arrived? A. Which one? Q. You said Caschera was present. A. There's two of them. Q. Were both of them there? A. I seen Gino. I didn't see Michael."); *see id.* at 141:9-11 ("Q. And Gino Caschera, just so it's clear, is not Michael Caschera; right? A. Right.").

for connecting the marked bills to Mr. McMillan.[87] Because he did not participate in the search and any illegal aspect of it was not based on evidence fabricated by him,[88] Caschera cannot be liable for an illegal search and seizure.

Accordingly, Caschera's motion for summary judgment on Count II is granted.

### D.    Count III - False Imprisonment

Mr. McMillan's first false imprisonment count appears to challenge his temporary detention at the stop.[89] This count remains as to Caschera only.[90] Fourth Amendment false imprisonment claims are based on detention pursuant to an arrest made without probable cause.[91] On this count, Mr. McMillan plainly states that he was detained only temporarily and was not arrested on June 11,[92] so the claim must

---

[87] Doc. 74-2 ¶¶ 20, 22-24. Havens was dismissed as to this count because Mr. McMillan's theory at the motion to dismiss stage centered on his contention that Caschera fabricated evidence. On that issue, I reasoned that reasonable reliance on Caschera's false statements (without knowledge that they were false) would insulate the searching officers from liability. Doc. 40 at 15-16 (citing *Vanderklok v. United States*, 140 F. Supp. 3d 373, 382 (E.D. Pa. 2015)). Discovery has produced evidence that the circumstances differed from Mr. McMillan's original theory, but he has not sought to amend his complaint, and I cannot do so for him. *ETC Int'l, Inc. v. Curriculum Advantage, Inc.*, 272 F. App'x 139, 141 (3d Cir. 2008) ("[T]he court has no power, let alone obligation, to amend sua sponte a plaintiff's inartful pleading."). I can only take the case as it comes, and Mr. McMillan has never alleged that Havens fabricated evidence.

[88] *See* Section III.B, *supra* (holding that there is no evidence that Caschera fabricated evidence).

[89] *See* Doc. 29 ¶¶ 130-140 (discussing "events of June [11] 2021").

[90] Doc. 40 at 15-16.

[91] *Harvard v. Cesnalis*, 973 F.3d 190, 202 (3d Cir. 2020) (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)); *see Covington v. Plymouth Twp. Police Dep't*, 779 F. Supp. 3d 509, 526-27 (E.D. Pa. 2025) (distinguishing wrongful seizure and false imprisonment claims based on whether there was an arrest and length of detention); *Williams v. Ponik*, 822 F. App'x 108, 113-14 (3d Cir. 2020) (citing *Baker v. McCollan*, 443 U.S. 137, 145 (1979)).

[92] Doc. 74-5 at 16:23-17:8, 105:6-8 ("Q. So you get pulled over on June 10th and then you get arrested on November 1st? A. Yes.").

fail.[93] Moreover, as stated in the prior section, Caschera was not present at the stop and he is not responsible for any false statements giving rise to an incorrect determination of probable cause. Thus, even if the detention at the stop were actionable on this count, Caschera had no personal involvement and therefore cannot be liable.

Accordingly, Caschera's motion for summary judgment on Count III is granted.

### E.    Count IV – Equal Protection

Mr. McMillan asserts an equal protection claim under the Fourteenth Amendment, contending that he was subjected to the June 11 stop, and more specifically the alleged strip search, because he is black.[94] This claim is brought against Caschera, Havens, and Gardner.[95] To survive summary judgment on his equal protection claim, Mr. McMillan must provide evidence of Defendants' "racially discriminatory intent or purpose"[96] and that he was "treated differently from others similarly situated."[97] Mr. McMillan contends in his deposition that

---

[93]  *Covington*, 779 F. Supp. 3d at 527 ("Without a finding of an arrest, the Court grants summary judgment for Officer Wells with respect to Plaintiff's false arrest/imprisonment claim."); *Kintzel v. Kleeman*, 965 F. Supp. 2d 601, 608-09 (M.D. Pa. 2013) (dismissing false imprisonment claim because the plaintiff was not arrested).

[94]  Doc. 29 ¶¶ 141-49.

[95]  *Id.*

[96]  *City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003) (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)).

[97]  *Abdul-Latif v. County of Lancaster*, 990 F. Supp. 2d 517, 531 (E.D. Pa. 2014) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990)).

during the stop Gardner repeatedly suggested that he was a gang member, which he believes evinces discriminatory intent.[98] Even if it does, Mr. McMillan's claim fails because he has not provided any evidence to show that he was treated differently than anyone else. Failure to identify a comparator is fatal to an equal protection claim.[99] And in any event, Mr. McMillan identified only Gardner's comments as racially tinged. So the claim fails as to Caschera and Havens for failure to show discriminatory intent (and, for Caschera, for lack of personal involvement).

Accordingly, Defendants' motion for summary judgment on Count IV is granted.

### F.    Counts VI, VII, VIII, & XI – Malicious Prosecution, False Arrest, & False Imprisonment (Fourth Amendment and Common Law)

Mr. McMillan's false arrest, false imprisonment, and malicious prosecution claims are brought against Caschera only, and stem from the arrest warrant for which Caschera was the affiant. "The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense."[100] "[A] plaintiff may succeed in a § 1983 action for false

---

[98]  *See* Doc. 74-5 at 53:12-54:10, 62:21-63:1, 63:24-64:11, 91:19-92:22.

[99]  *Brooks v. State College Area Sch. Dist.*, 707 F. Supp. 3d 448, 468 (M.D. Pa. 2023) (quoting *Stradford v. Sec'y of Pa. Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022)); *Saucon Valley Manor, Inc. v. Miller*, 392 F. Supp. 3d 554, 584 (E.D. Pa. 2019).

[100]  *Groman*, 47 F.3d at 634-35 (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)).

arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause."[101]

"False arrest and false imprisonment are both injuries arising from the same Fourth Amendment injury, *i.e.* an unreasonable seizure. False arrest is a 'species' of false imprisonment and they can both be considered one tort.'"[102] A false imprisonment claim arises once the plaintiff is detained pursuant to the false arrest.[103] A finding "in plaintiff's favor on the false arrest claim" supports a "find[ing] that [Plaintiff] suffered a violation of his constitutional rights by virtue of his detention pursuant to that arrest."[104]

"Malicious prosecution differs from false arrest inasmuch as 'a claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more.'"[105] Once a

---

[101]  *Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 651 (W.D. Pa. 2010) (quoting *Wilson v. Russo,* 212 F.3d 781, 786-87 (3d Cir. 2000))

[102]  *Clifton v. Borough of Eddystone*, 824 F. Supp. 2d 617, 624 n.3 (E.D. Pa. 2011) (citing *Wallace v. Kato*, 549 U.S. 384, 388-89 (2007)); *see Moffitt v. Britton*, No. 21-CV-0109, 2023 WL 1863314, at *5 (W.D. Pa. Feb. 9, 2023) ("[F]alse arrest and false imprisonment are essentially the same claim." (quoting *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999)).

[103]  *Groman*, 47 F.3d at 636.

[104]  *Id.* (citing *Pritchard v. Perry*, 508 F.2d 423, 425 (4th Cir. 1975)).

[105]  *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007) (quoting *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998)).

person is detained pursuant to legal process, false imprisonment and false arrest claims cease to provide relief, and malicious prosecution takes over.[106] To prove a Fourth Amendment malicious prosecution claim, a plaintiff must show: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[107]

Mr. McMillan has not produced evidence to satisfy the elements of knowing or reckless falsity on the false arrest and imprisonment claims and malicious purpose on the malicious prosecution claim. He contends that the false statements in the affidavit of probable cause related information about the supposedly fabricated account of the exchange between Mr. McMillan and Brown, and the presence of the prerecorded police funds on Mr. McMillan's person. There is no evidence in the record from which a jury could reasonably conclude that Caschera lied in preparing the affidavit. He truthfully related the information that he gathered firsthand, and nothing suggests that he knew that information gathered from other officers—the account of the exchange with Brown and recovery of the prerecorded bills[108]—was

---

[106] *Kato*, 549 U.S. at 388-90.
[107] *Black*, 835 F.3d at 364 (quoting *Knorr*, 477 F.3d at 82) (emphasis omitted).
[108] *See* Doc. 74-3 ¶¶ 22, 27.

false, if in fact in was.[109] Moreover, the record is absolutely devoid of evidence suggesting anything about Caschera's purpose in submitting the affidavit.[110] Because there is no evidence that he deliberately or recklessly provided false information in the affidavit of probable cause, nor that he acted with malice or a purpose other than justice, Caschera cannot be liable for Mr. McMillan's arrest, related detention, and subsequent prosecution.[111]

Accordingly, Caschera's motion for summary judgment on Counts VI, VII, VIII, and XI is granted.

## G.    Count V - Retaliation

Mr. McMillan argues that the June 11 search and October arrest were retaliation for his April 2021 victory on the weapon possession charges, and specifically his exercise of his First Amendment rights.[112] To succeed on a section 1983 retaliation claim, the plaintiff must show "(1) constitutionally protected

---

[109] *See Reedy v. Evanson*, 615 F.3d 197, 214 (3d Cir. 2010) (citing *Wilson*, 212 F.3d at 783, 786-87); *see* Doc. 74-3 ¶¶ 27-29.

[110] *See* Doc. 74-3 ¶¶ 31-32 (averring that Caschera's "only purpose in this case was to enforce narcotics laws").

[111] *See Wilson*, 212 F.3d at 786-89. This finding covers Mr. McMillan's state law claim for false imprisonment because such a claim requires a showing that the plaintiff "(1) . . . was detained; and (2) the detention was unlawful." *Martin-McFarlane v. City of Phila.*, 299 F. Supp. 3d 658, 671 (E.D. Pa. 2017) (citing *Gwynn v. City of Phila.*, 719 F.3d 295, 304 n.4 (3d Cir. 2013)), and the failure of evidence showing that Caschera lied in the affidavit precludes a finding that the detention was unlawful because of him. *See also Kokinda v. Breiner*, 557 F. Supp. 2d 581, 593-94 (M.D. Pa. 2008) (analyzing Pennsylvania state false arrest and false imprisonment claims together, reasoning that Pennsylvania state false arrest claim is "co-extensive" with federal constitutional false arrest claim, and dismissing Pennsylvania state false arrest and false imprisonment claims based on analysis resulting in denial of federal false arrest claim).

[112] Doc. 29 ¶¶ 150-57.

conduct, (2) an adverse action by . . . officials 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,' and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him.'"[113] A plaintiff fails the causal link element if he cannot show that the defendant knew of the protected conduct at the time of the adverse action.[114]

Mr. McMillan's retaliation claim must fail because the only evidence in the record establishes that Defendants did not know about Mr. McMillan's testimony at the suppression hearing before his earlier trial when they searched him and sought an arrest warrant. Havens and Caschera both swear that they had "no knowledge of any prior criminal litigation or testimony involving [Mr. McMillan] in other cases" at the time of the events of this case.[115] And there is nothing in the record to suggest that Gardner knew anything about the prior charges either.[116] Without any evidence suggesting that Defendants knew about his protected activity, their actions cannot be retaliatory.

Accordingly, Defendants' motions for summary judgment on Count V are granted.

---

[113] *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *see Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[114] *Zucal v. County of Lehigh*, 760 F. Supp. 3d 290, 299-300 (E.D. Pa. 2024) (quoting *Eskridge v. Phila. Hous. Auth.*, 772 F. App'x 296, 299 (3d Cir. 2018)).

[115] Docs. 74-2 ¶ 33; 74-3 ¶ 30.

[116] *See* Doc. 74-5 at 45:16-46:7, 75:15-76:23, 95:14-96:2 (repeatedly admitting that Gardner was not involved in the gun case).

### H.    Counts XII, XIII, & XIV – Intentional Infliction of Emotional Distress, Trespass to Chattel, & Conversion

Because Defendants' motions for summary judgment are granted as to all of the preceding issues, only Mr. McMillan's state law claims remain. The Court has only supplemental jurisdiction over these claims.[117] A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction."[118] "As a general rule, the Court should decline to exercise supplemental jurisdiction over state law claims where all of the federal claims have been dismissed."[119] I will take that path here. The remaining claims arise under state law and likely do not give rise to sufficient damages to justify the expenditure of resources for further federal litigation.[120] Additionally, Mr. McMillan's failure to oppose Defendants' motions for summary judgment indicates a lack of concern with pursuing his claims in this venue. So I conclude that declining supplemental jurisdiction is not unfair.[121]

---

[117]    *See Lyon v. Whisman*, 45 F.3d 758, 759-60 (3d Cir. 1995).

[118]    28 U.S.C. § 1367(c)(3).

[119]    *Anserphone, Inc. v. Bell Atl. Corp.*, 955 F. Supp. 418, 433 (W.D. Pa. 1996) (citing *Heller v. CACL Fed. Credit Union*, 775 F. Supp. 839, 843 (E.D. Pa. 1991)).

[120]    *See Booth v. Drissel*, No. 20-CV-1751, 2023 WL 7183508, at *6 (E.D. Pa. Nov. 1, 2023) (declining supplemental jurisdiction over state law claims after granting summary judgment to defendants on all federal claims).

[121]    *See Anserphone*, 955 F. Supp. at 433 (quoting *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1285 (3d Cir. 1993)).

Accordingly, Mr. McMillan's claims for intentional infliction of emotional distress (Count XII), trespass to chattel (Count XIII), and conversion (Count XIV) are dismissed without prejudice.

## IV.    CONCLUSION

For the above-stated reasons, Defendants' motions for summary judgment are granted as to Counts II-XI. Counts XII-XIV are dismissed without prejudice.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge